UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARIN GROOMS and CATHY GROOMS, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, a foreign insurer,<br><br>Defendant. | Case No. C08-982 MJP<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' motions for summary judgment. (Dkt. Nos. 19 & 22.) After reviewing the motions, responses (Dkt. Nos. 28 & 31), replies (Dkt. Nos. 33 & 34), and the balance of the record, and having determined that oral argument is unnecessary to assist the Court in its decision, the Court hereby GRANTS Defendant's motion and DENIES Plaintiffs' motion for the reasons set forth below. Because the Court has not considered contested evidence in its analysis, it does not reach Plaintiffs' motions to strike. (Dkt. No. 31 at 2; Dkt. No. 34 at 2.)

**Background**

Plaintiffs are a married couple who purchased property in the City of Lake Stevens (the

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 1

"Lake Stevens Property") in early 2004. At the time of that purchase and since, Plaintiffs have resided in a separate property in Arlington, Washington. Before Plaintiffs purchased it, The Lake Stevens Property was used as a bookstore and was zoned for commercial use. Ms. Grooms established the Lake Stevens Property as a business premises, operating her skin care and cosmetic business there and renting out areas of the property to tenants who provided additional health and beauty services.

Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") provides insurance in Washington state. On January 29, 2004, Ms. Grooms contacted Liberty Mutual about an insurance policy for the Lake Stevens Property. By telephone, Liberty Mutual agent Christopher Jenkins assisted Ms. Grooms with the application process and faxed all or some portion of the application to Ms. Grooms, who signed the application's signature page and returned it to Mr. Jenkins by fax.

Liberty Mutual issued a Homeowners Policy to Plaintiffs for the Lake Stevens Property (the "Policy") effective February 2, 2004. The Policy provides first party property coverage and third party liability coverage. Liberty Mutual mailed the Policy to Plaintiffs at the Lake Stevens Property address.

Sometime during the application process or soon after, Ms. Grooms asked Mr. Jenkins about a business pursuits endorsement to be added to the Policy. Mr. Jenkins claims that Ms. Grooms told him that she needed the endorsement because she occasionally saw customers of her cosmetic and skin care business at her residence. A Business Pursuit Endorsement ("HO-71") was added to the Policy on March 12, 2004, resulting in an eight dollar increase of annual premium. The Endorsement provided coverage for personal liability and medical payment to others, applicable to the business pursuits of the insured. (Dkt. No. 23, Ex. 9.)

Plaintiffs renewed the Policy in 2005, 2006, and 2007. On August 20, 2007, a fire destroyed the Lake Stevens Property. After investigating the fire loss, Liberty Mutual cancelled the Policy on August 30, 2007, effective October 24, 2007, on the ground that Ms. Grooms's use

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 2

of the building for business purposes constituted a "change in risk" that did not meet the requirements of the Policy. (Dkt. No. 20 at 9.) This cancellation was prospective only and did not affect coverage for claims occurring before October 24, 2007. Plaintiffs submitted a claim under the Policy for the fire loss. Over nine months after the fire, on June 3, 2008, Liberty Mutual reinstated the Policy for a day, sent Plaintiffs refund checks for the premiums paid on the 2004, 2005, 2006, and 2007 Policy, and then cancelled the Policy again on June 4, 2008. Plaintiffs refused to cash the refund checks and returned them to Liberty Mutual.

Plaintiffs filed this action in Snohomish County Superior Court on June 9, 2008 bringing claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, violation of the Fair Claims Practices Regulations, and violation of the Insurance Fair Conduct Act. (Dkt. No. 5.) Defendants removed the action to this Court on June 26, 2008. In its answer, Defendants request declaratory judgment that Plaintiffs are not entitled to coverage of the claim under the Policy, and bring a counter-claim for rescission of the Policy due to material misrepresentation. (Dkt. No. 16.)

Currently before the Court are Defendant's motion for summary judgment on its request for declaratory judgment and Plaintiffs' motion for summary judgment on Defendant's claim for rescission. Neither party has moved for summary judgment on the claims brought in Plaintiffs' complaint, and those claims survive these motions.

**Legal Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On review, the Court must view the underlying facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and summary judgment is not warranted if a material issue of fact exists for trial, Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). "Summary

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 3

judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Analysis**

A. <u>Defendant's Request for Declaratory Judgment</u>

Defendant seeks a finding that Plaintiffs are not entitled to coverage for their fire loss because the Homeowner's Policy did not provide property coverage for the risk of loss caused by the operation of a business in the insured building. (Dkt. No. 22 at 1.) When language in an insurance policy is clear and unambiguous, the Court "must enforce it as written and may not modify it or create ambiguity where none exists." Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171 (2005). Because the policy language unambiguously excludes property coverage for the Lake Stevens building when used for business purposes and not as a residence, the Court must GRANT Defendant's request for declaratory judgment.

Property Coverage under Section I of the Policy includes four types of coverages: (1) Coverage A – Dwelling; (2) Coverage B – Other Structures; (3) Coverage C – Personal Property; and (4) Coverage D – Loss of Use. (Dkt. No. 23, Ex. 7 at 82–84.) Plaintiffs argue that the building damaged by fire is encompassed by Coverage A – Dwelling.

Coverage A provides property coverage for "the dwelling on the residence premises . . . ." (Dkt. No. 23, Ex. 7 at 82.) The Policy defines "residence premises" as "the one family dwelling . . . where you reside . . . ." (Dkt. No. 23, Ex. 7 at 82.) The Policy does not define "dwelling," therefore the Court must determine the "plain, ordinary, and popular meaning[] as would be understood by the average insurance purchaser." Wheeler v. Rocky Mountain Fire & Casualty Co., 124 Wn.App. 868, 872 (2004). To determine the plain meaning of an undefined term, Washington courts commonly rely on dictionaries and the common law. See Alger v. American Security Ins. Co., No. C07-1438 TSZ, WL 4426887 (W.D. Wash. , September 23, 2008) (using Webster's Third New International Dictionary, Barron's Dictionary of Insurance Terms, and Black's Law Dictionary to define the term "dwelling" in an insurance policy) (citing

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 4

Boeing, 113 Wn.2d at 877–78; Stuart v. Am. States Ins. Co., 134 Wn.2d 814, 821).

As summarized in Alger, Webster's Third New International Dictionary defines "dwelling" as a "building or construction used for residence[,]" Black's Law Dictionary defines "dwelling house" in relevant part as "[t]he house or other structure in which a person lives[,]" and Barron's Dictionary of Insurance Terms refers in relevant part to "dwelling coverage" as "[c]overage for property damage to a building used as a dwelling." Webster's Third New International Dictionary, 706 (Philip Babcock Gove ed., G. & C. Merriam Company 1981) (1961); Black's Law Dictionary, 213 (5th ed. 1996); Barron's Dictionary of Insurance Terms, 144-45 (Harvey W. Rubin ed., Barron's Educational Series, Inc. 2000). Based on these sources, the Court concludes that the plain meaning of the term "dwelling" is a structure used for residential purposes.

Washington courts have interpreted the term "residential" as excluding business or commercial use. See Metzner v. Wojdyla, 125 Wn.2d 445, 447 (1994) (finding that a neighbor's commercial use of property to run a daycare facility violated a covenant limiting property use to "residential purposes only"). The Washington Supreme Court has stated that "the term 'residential' is the antonym of 'business' and that accepting paying customers [is] not synonymous with a residential purpose." Id. at 451 (citing Hagemann v. Worth, 56 Wn.App. 85, 91 (1989)). Applying this principle to the case at bar, the Court determines that the Policy provides property coverage for the dwelling where Plaintiffs reside, and therefore property coverage cannot be extended to a dwelling that is used for business and not residential purposes. As discussed below, the record establishes that Plaintiffs did not reside at the Lake Stevens Property but instead used the property for conducting Ms. Grooms's business, therefore the fire loss of that building is not covered by the Liberty Mutual Homeowner's Policy.

Plaintiffs urge the Court to interpret the terms "residence premises" and "dwelling" as "descriptive, not exclusionary." (Dkt. No. 31 at 8.) Although the Court appreciates Plaintiffs' creativity, it finds no legal basis for application of such a theory to the current facts. Plaintiffs'

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 5

authority, applying Oregon law, involves circumstances unlike those of the Grooms, where homeowners rented the insured premises to tenants who then resided on the premises. See Farmers Insurance Co. of Oregon v. Trutanich, 123 Or. App. 6, 14 (Or. Ct. App. 1993); Insurance Co. of North America v. Howard, 679 F.2d 147 (9th Cir. 1982); see also Williamson v. Standard Fire Ins. Co., C.A. No. 04C-07-033 FRS, 2005 WL 6318348 (Del. Sup. Ct., Aug. 19, 2005). Washington law aligns with these cases, stating that "the receipt of rental income . . . in no way detracts or changes the residential characteristics of the use by the tenant." Ross v. Bennett, 148 Wn. App. 40, 51 (Wash. Ct. App. 2008). However, Plaintiffs' property was used only for commercial purposes, and the record indicates that no one, the Grooms or otherwise, resided on the property. Although Ms. Grooms did rent space in the building to tenants, those tenants used the premises for business purposes, not as residents.

Plaintiffs also argue that Coverage A does not exclude business use of the building because, unlike Coverage B, it does not contain a specific business purposes exclusion. (Dkt. No. 31 at 10–11.) Coverage B applies to other structures on the insured property that are not attached to the dwelling covered by Coverage A. Coverage B states "[w]e do not cover other structures: (1) used in whole or in part for business . . . ." (Dkt. No. 23, Ex. 7 at 83.) Plaintiffs ask, "[w]hy does Coverage B have an exclusion while Coverage A does not?" (Dkt. No. 31 at 11.) The answer lies in the analysis above, because the plain meaning of the term "dwelling" connotes a place of residence, where a person lives and, as acknowledged by the Washington Supreme Court, is inconsistent with a business or commercial purpose. Metzner, 125 Wn.2d at 447. Because of this definition, the Policy's failure to include a business purposes exclusion in Coverage A does not require coverage under that section for a structure used only for business purposes. Similarly, Plaintiffs' examples of explicit coverage for business personal property under Coverage C and coverage for loss of rents in Coverage D, (Dkt. No. 31 at 12), additional examples of the Policy's exclusion of business coverage in Section II of the Policy governing liability coverage, (Dkt. No. 31 at 12–13), and Endorsement HO-322 regarding Property and

Liability Coverages for Home Day Care Business, (Dkt. No. 24-2 at 34), do not alter the definition of "dwelling," the only property covered by Coverage A of the Policy. The Policy is internally consistent and does not contain conflicting terms because the word "dwelling" is used only in Coverage A.[1]

Finally, Plaintiffs contend that Liberty Mutual is not entitled to summary judgment on this claim because "[w]hether Cathy Grooms 'resided' in the house that burned is a disputed issue of material fact." (Dkt. No. 31 at 2.) Webster's Dictionary defines "reside" as "to live in a place permanently or for an extended period." Webster's Third New International Dictionary at 1482. Yet Ms. Grooms testified that she never moved into the Lake Stevens Property "on a permanent basis[,]" she "never moved all [her] personal possessions into that location with the intention of taking up residence[,]" and estimated that she spent a total of only ten nights at the property over a period of three years. (Dkt. No. 23, Ex. 3 at 27, 29, 39.) The only evidence suggesting a possible intent to reside at the Lake Stevens Property is Ms. Grooms's statement that she purchased the property for her cosmetics business and as a place for her "to get away" and "have [her] own space[,]" (Id. at 29), because she "need[ed] an alternative place to live," (Dkt. No. 20 at 2.) Yet Ms. Grooms defined "get away" as "[j]ust to stay a day or two or whatever it took," (Id. at 38), an explanation that is inconsistent with the definition of "reside." Regardless of her intent at the time of purchase, the evidence shows that Ms. Grooms did not reside at the Lake Stevens Property during the Policy period.

Because the Policy provides property coverage for a dwelling where Plaintiffs reside, and because Plaintiffs did not reside in the building on the Lake Stevens Property during the Policy

---

[1] Without citing applicable authority, Plaintiffs also argue that Liberty Mutual waived its right to enforce the terms of the Policy when it reinstated the Grooms's Policies for 2004, 2005, 2006, and 2007 and sent the Grooms refund checks for the premiums paid, thereby "rescind[ing] these policies without court action or approval." (Dkt. No. 31 at 5.) Yet Plaintiffs argue elsewhere in their briefing that Liberty Mutual failed to rescind the Policy and urges the Court to deny Liberty Mutual's counter-claim for rescission. The Court addresses the issue of rescission in Section B of this order.

period, Liberty Mutual is entitled to summary judgment on its request for declaratory judgment. The Court finds that Plaintiffs' fire loss does not fall within the Policy's coverage.

B. Defendant's Counterclaim for Rescission

Plaintiffs move for summary judgment on Defendant's rescission claim. (Dkt. No. 19.) Because there are unresolved facts that are necessary to the resolution of this claim, the Court DENIES Plaintiffs' motion.

Under Washington law, an insurer may rescind a policy when: (1) the policyholder represented as truthful certain information during the negotiation of the insurance contract; (2) those representations were untruthful, or misrepresentations; (3) the misrepresentations were material; and (4) the misrepresentations were made with the intent to deceive. Cutter & Buck, Inc. v. Genesis Ins. Co., 306 F. Supp. 2d 988, 997 (W.D. Wash. 2004) (citing RCW 48.18.090(1)). Liberty Mutual contends that Ms. Grooms misrepresented her business use of the Lake Stevens Property during the application process with the intent to deceive and that the Policy should be rescinded.

Plaintiffs' summary judgment motion argues that Liberty Mutual waived its right to rescind the Policy when it cancelled the Policy on August 30, 2009, effective October 24, 2009. (See Dkt. No. 20 at 9.) Plaintiffs cite non-binding authority for the proposition that, when an insurer engages in an action affirming a policy after learning of facts that would create grounds for avoidance of the contract, it has waived its right to void the contract. See American Family Mut. Ins. Co. v. Kivela, 408 N.E.2d 805, 811 (Ind. Ct. App. 1980) ("[A] distinct act of affirmance of a contract of insurance, made with knowledge of facts which would create grounds for avoidance, constitutes a waiver of the right to avoid the contract."); Haugseth v. Cotton States Mut. Ins. Co., 192 Ga. App. 853, 855 (Ga. Ct. App. 1989) ("defendant might be prevented . . . from relying upon plaintiff's material misrepresentation since it appears that after discovery of such misrepresentation defendant did not promptly move to rescind the insurance contract, but treated it as valid and binding and retained plaintiff's premiums which it viewed as earned");

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 8

Dairyland Ins. Co. v. Kammerer, 213 Neb. 108, 111 (Neb. 1982) (finding that insurer could "determine that, because of the alleged fraudulent statements made to it, it wished to cancel the policy from its inception and return to [the policyholder] the entire premium, on the theory that the policy never came into existence, or it could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy"). It appears that Washington law comports with these holdings as to the repayment of premiums. See Neat v. United States Fid. & Guar. Co., 170 Wash. 625, 633 (Wash. 1932). Nonetheless, the issue cannot be resolved on this motion because disputed facts remain as to whether Liberty Mutual's action affirming the Policy, the cancellation in August 2007, was made <u>after</u> it had discovered the alleged misrepresentations.

To succeed on their waiver argument, Plaintiffs must show that Liberty Mutual discovered the possible grounds for rescission (the alleged misrepresentation) <u>before</u> taking an action affirming the validity of the insurance policy (the cancellation). As evidence, Plaintiffs submit two documents to the Court: (1) the August 30, 2007 letter from Liberty Mutual notifying Plaintiffs of the Policy cancellation; and (2) the November 2, 2007 letter from Liberty Mutual to Washington Office of Insurance Commissioner regarding the cancellation. (Dkt. No. 20 at 9–12.) Both letters attribute the cancellation to a "change in risk." (Id.) In the November 2, 2007 letter, Liberty Mutual states that it cancelled the Policy after the fire because the "home <u>no longer</u> met the requirements for insurance under our personal homeowner's policy." (Dkt. No. 20 at 11 (emphasis added).) Use of the term "no longer" suggests that Liberty Mutual believed that the Lake Stevens Property had been consistent with the Policy terms for some initial portion of the Policy period, but that the risk exposure had changed at some time during the Policy period when "business use was no longer only incidental to the residence." (Dkt. No. 20 at 11.)

To support its rescission claim, Liberty Mutual alleges that Ms. Grooms misrepresented her intended use of the Lake Stevens Property when she allegedly told Mr. Jenkins that she would use the property as a residence and did not disclose her intent to use it for business

ORDER ON MOTIONS FOR SUMMARY JUDGMENT — 9

purposes. There is no evidence in the record indicating when Liberty Mutual discovered the alleged misrepresentation.[2] Construing the facts in the light most favorable to Defendant, the Court cannot conclude that Liberty Mutual was aware that the Lake Stevens Property had never been used for residential purposes at the time it cancelled the Policy, and therefore cannot find that Liberty Mutual knew of the alleged grounds for rescission at the time of the cancellation. Because this issue precludes resolution of the motion, the Court need not reach the issue of Liberty Mutual's attempted rescission on the Policy of Jun 3–4, 2008. Plaintiffs' motion for summary judgment is denied.

## Conclusion

Because the term "dwelling" in the Policy is unambiguous, the Court finds that Plaintiffs' claim for loss of a building used for business purposes only is not covered by the Policy, and Defendant's request for declaratory judgment on that issue is GRANTED. Because there remain unresolved facts as to when Defendant discovered that Ms. Grooms allegedly misrepresented her intended use of the Lake Stevens Property when she applied for the Policy, the Court cannot find as a matter of law that Liberty Mutual waived its right to rescind the Policy when it cancelled the Policy after the fire. Plaintiffs' motion for summary judgment is DENIED.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: August 13, 2009.

*[signature]*

Marsha J. Pechman
U.S. District Judge

---

[2]Plaintiffs argue that Liberty Mutual cannot make its case for rescission without the Policy application, which Plaintiffs argue is inadmissible evidence. (Dkt. No. 34 at 7.) In making this argument, Plaintiffs disregard Liberty Mutual's evidence in the form of Christopher Jenkins's testimony regarding Ms. Grooms's alleged misrepresentation.